RICHARD J. PRESTON *vs.* JOHN KNIGHT.

Essex. Nov. 5, 1875. Jan. 24. — March 7, 1876.

An action of tort for injuries alleged to have been caused by the negligence of the defendant's servant in driving his wagon, was referred, by agreement of parties and under rule of court, to an arbitrator, judgment on whose report was to be final. His report stated the evidence presented before him, by which it appeared that the defendant was a tanner and currier, employing the wagon and its driver in his business, usually sending it away weekly with a load of stock, and occasionally, upon its return empty, agreeing to bring back a load for some other person; that at the time of the injury the defendant had so agreed to carry a load of machinery, which the owners thereof were to load and unload; that they loaded the machinery accordingly, the driver helping in lifting, but taking no part in stowing it; that a heavy table at the top of the load was not bound on, but a servant of the owners rode on the wagon to steady the table and keep it in place; that the driver, before starting, said to the owners that the table should be fastened on, and they answered that it was not necessary; the driver then asked them if the load was all on, and, on their answering that it was, started on his way; and that, in going down a descent in the road, the table fell and caused the injury sued for. The arbitrator reported that the horses, wagon and driver were suitable for the business in which they were employed; that the owners of the machinery were guilty of negligence in not properly binding their load upon the wagon, and in directing the driver to start with the load in the condition in which they had placed it; and that the driver was careless in attempting to carry the load through the street with the wagon so loaded; and that the main question was, whose servant the driver was in starting and driving the wagon as it was loaded; and the arbitrator reported the case to the Superior Court "for its determination as a matter of law" for which party judgment should be entered as depending upon this question. The Superior Court gave judgment for the plaintiff on the report. *Held,* on appeal to this

court, that the question whether the driver was the servant of the defendant in starting and driving the wagon with the load so put upon it was a fact which the arbitrator was bound to decide, and that the judgment must be set aside.

TORT for injuries occasioned by the negligence of a person alleged to be the defendant's servant. The case was referred, by agreement of parties and rule of the Superior Court, to an arbitrator, judgment on whose report was to be final, and execution to issue accordingly. The report of the arbitrator was as follows :

"It appeared upon the evidence that the defendant was engaged in the tanning and currying business at Manchester, and the owner of a two-horse team employed in his business, with a teamster named John Lamaskie; that he usually sent his team, with the driver Lamaskie, to Peabody, once a week, with a load of stock, the team usually returning without a load, but sometimes the defendant would have a return load, and occasionally some person desiring a load to be taken from some point on the road to Manchester, would employ the defendant to carry it, which would be done by the team on its return from Peabody to Manchester; that about May 21, 1871, Rust and Marshall, of Manchester, had purchased a quantity of machinery at the building of one Webber in Beverly, on the western side and a short distance from the track of the Eastern Railroad, and contracted to have the team of the defendant, on its return trip from Peabody, take the machinery from that building to Manchester for the sum of three dollars. It was agreed between the defendant and Rust and Marshall that the latter should furnish men to load the same at Beverly and unload at Manchester, which they did, the teamster Lamaskie helping to lift the machinery, but taking no part in stowing it; that the machinery, except a table, after being loaded, was bound with a cart-rope ; the table, being about six feet long and three feet wide, was put on top of the other machinery, but not bound on, but a man in the employ of Rust and Marshall rode on the wagon and promised to steady the table and keep it in the place where it was put. The wagon had side-boards and stakes ; the load, exclusive of the table, was up to the top of the side-boards; the table was not above the tops of the stakes. The team so loaded by Rust and Marshall was started by the teamster, he first having said to

Marshall that the table should be fastened on, and Marshall replying, 'It don't need it.' The teamster, before starting, asked Marshall if 'all the stuff was on, and he was ready to have him start,' to which Marshall replied 'Yes.' The table started a little before the team crossed the railroad, the man on the wagon saying 'I think I can hold it.' When the team was just over the railroad track and on descending ground, the railroad track being a little higher than the highway, which it passed at grade, the table fell off in front of the wagon, struck the thill horse, frightened him, and caused both horses to run and become unmanageable. The plaintiff's horse and carryall were in the highway going in an opposite direction. There were in the carryall the plaintiff's two daughters and his nephew. One of the daughters was driving, and attempted to get out of the way, but was unable to do so. The carryall was struck by the team while the horses were running, capsized, and damaged to the amount of one hundred and fifty dollars. The plaintiff and those in the carryall exercised due care.

" The horses, wagon and teamster furnished by the defendant were suitable for the business for which they were to be used. It was carelessness on the part of the teamster to attempt to carry the load through the street he was then on, with the wagon loaded as it then was, without the load being more securely bound on to the wagon. Rust and Marshall were guilty of negligence in not properly binding their load on to the wagon, and in directing the teamster to start for Manchester with the load in the condition in which they had placed it.

" The main question is, whose servant was the teamster in starting and driving the team as it was loaded. If, upon the facts, the teamster was not the servant of the defendant in starting and driving the team, then judgment is to be for the defendant, with costs of this reference and costs of court for the term of entry, the term of reference, the present term and one half of the other terms the case has been in court. If the teamster was the servant of the defendant in starting and driving the team so loaded, judgment is to be for the plaintiff for the sum of one hundred and fifty dollars, with interest from the date of the plaintiff's writ, as damages, with costs of this reference and costs of the writ and service and costs of court for the term of

entry, the term of reference and the present term, with one half of the other terms that the action has been in court. And I report this case to the Superior Court, upon the foregoing facts, for its determination as a matter of law, for which party judgment should be entered, hereby expressly referring the question of law herein reserved to the decision of the court."

In the Superior Court judgment was ordered for the plaintiff on the report of the arbitrator; and the defendant appealed.

The case was argued in November, 1875, and reargued in January, 1876, by

*J. C. Perkins*, for the plaintiff.

*S. B. Ives, Jr.*, for the defendant.

GRAY, C. J. Under the submission by agreement of parties and rule of court, the arbitrator was bound to decide all the facts, and could refer nothing but questions of law to the court. *Bigelow* v. *Newell*, 10 Pick. 348. *Ellicott* v. *Coffin*, 106 Mass. 365. The question whether the driver was the servant of the defendant, in starting and driving the wagon with the load put upon it by Rust and Marshall, was a material question of fact, which has not been decided by the arbitrator. *Kimball* v. *Cushman*, 103 Mass. 194. *Brady* v. *Giles*, 1 Mood. & Rob. 494. His calling this question of fact a question of law did not make it such, nor enlarge the authority of the court over his award. The rule of reference might indeed have been discharged, or modified by agreement of the parties, sanctioned by the court, so as to submit any question of fact to its decision. But any such modification must appear of record. *Hicks* v. *McDonnell*, 99 Mass. 459. Upon the award as it stood under the original rule of reference, no inference of fact appears to have been, or could be, decided by the Superior Court. As a material question of fact has not been determined, the judgment must be set aside, and the case stand for further proceedings in the court below, by a recommitment to the arbitrator or otherwise.

*Judgment set aside.*